**Appellants' Motion for Rehearing Overruled; Memorandum Opinion of July 23, 2013 Withdrawn; Affirmed and Substitute Memorandum Opinion filed September 26, 2013.**



In The

# Fourteenth Court of Appeals

---

## NO. 14-12-00322-CV

---

## DANIEL DROR II, INDIVIDUALLY AND TRUSTEE OF THE DANIEL DROR II TRUST OF 1998, AND DANIEL DROR, Appellants

### V.

## DANIEL MUSHIN, Appellee

---

**On Appeal from the 151st District Court
Harris County, Texas
Trial Court Cause No. 2008-02617**

---

## SUBSTITUTE MEMORANDUM OPINION

We overrule appellants' motion for rehearing, withdraw our memorandum opinion issued July 23, 2013, and issue this substitute memorandum opinion.

Appellants, Daniel Dror II, Individually and as Trustee of the Daniel Dror II Trust of 1998, and Daniel Dror (collectively "the Drors"), appeal a judgment in favor of appellee, Daniel Mushin, on his claim for breach of a settlement agreement.[1] In five issues, the Drors challenge the pertinent jury findings on liability and the trial court's award of attorney's fees. We affirm.

## I. BACKGROUND

Mushin intervened in the underlying litigation between the Drors and an unrelated party. The Drors counterclaimed against Mushin. The underlying dispute arose from Mushin's purchase of stock in Atlantis International Corporation ("Atlantis"). Both Dror II and Mushin were officers and directors of Atlantis, and they owned the majority of its shares. Dror Sr. has an ownership interest in, and is CEO of, American International Industries, Inc. ("AII"). Dror II works for AII.

At a deposition on November 18, 2010, the parties announced a settlement agreement on the record. In summary, the terms of the recited agreement were the following:

- The Drors will pay Mushin $200,000 in cash as follows: $100,000 by November 24, 2010; $5,000 per month for eleven months, beginning thirty days after the initial payment; and a balloon payment of $45,000 due one year from the date of closing.

- 150,000 restricted shares of AII stock will be transferred to Mushin.

- Mushin will convey to AII all stock he owns in Atlantis and resign as an officer and director of Atlantis.

---

[1] All Dror parties are similarly situated with respect to the claim and judgment against them and their appellate complaints. Therefore, we will refer to them collectively as "the Drors," except when necessary to refer to a party separately as "Dror Sr." or "Dror II."

The next day, the parties filed in the trial court a written Rule 11 agreement ("the agreement"), to which they attached the transcript of their announced settlement. In the agreement, the parties recited that execution of settlement documents, payment of consideration, and submission of a dismissal order would occur on or before December 1, 2010. Thus, the parties agree December 1 (not November 24, as recited on the record) became the date by which to complete the closing of the settlement and payment of initial consideration.

The settlement was never consummated. Central to the present case is the dispute over which party breached the agreement. It is undisputed the Drors never made the cash payments or transfer of AII stock to Mushin, as required under the agreement. However, the Drors contend they are not liable for breach of the agreement because Mushin first repudiated by insisting on requirements inconsistent with the agreement. In contrast, Mushin contends he did not repudiate and the Drors repudiated by imposing additional requirements.

When the settlement failed to close, Mushin amended his petition to add a claim for breach of the agreement. A jury found as follows:

- The Drors failed to comply with the agreement, and the failure to comply was not excused by Mushin's prior repudiation.
- Mushin did not fail to comply, tendered performance, and was ready, willing, and able to perform his obligations within a reasonable time.
- $296,000 would fairly and reasonably compensate Mushin for his damages resulting from the Drors' failure to comply, defined as "[t]he value of the settlement (150,000 restricted shares of [AII] stock, plus the cash) minus the value of the Atlantis Stock in December 2010."
- Mushin's reasonable and necessary attorney's fees were $35,500 through trial and $25,000, $20,000, and $10,000 for various stages of an appeal.

3

The Drors filed a motion to disregard the jury findings and for judgment notwithstanding the verdict, which the trial court denied. On January 30, 2012, the trial court signed an amended final judgment, ordering that Mushin recover the amounts assessed by the jury.[2] The Drors filed a motion for new trial and alternatively motion for remittitur and motion to modify, correct, or reform the amended final judgment, which the trial court denied. Mushin filed a voluntary remittitur reducing the amount of attorney's fees through trial to $33,500 and for the various stages of appeal to $15,000, $10,000, and $5,000.

## II. BREACH-OF-CONTRACT ISSUES

In their first three issues, the Drors contend the evidence is legally and factually insufficient to support the following jury findings: (1) the Drors' failure to comply was not excused by Mushin's prior repudiation; (2) Mushin tendered performance and was ready, willing, and able to perform; and (3) the Drors failed to comply but Mushin did not fail to comply.

When examining a legal-sufficiency challenge, we review the evidence in the light most favorable to the challenged finding and indulge every reasonable inference that would support it. *City of Keller v. Wilson*, 168 S.W.3d 802, 822 (Tex. 2005). We credit favorable evidence if a reasonable fact finder could and disregard contrary evidence unless a reasonable fact finder could not. *Id.* at 827. The evidence is legally sufficient if it would enable a reasonable and fair-minded person to reach the verdict under review. *Id.*

The Drors challenge findings that vary on which party bore the burden of proof. A party challenging legal sufficiency relative to an adverse finding on

---

[2] The trial court amended an original judgment to reduce the amount of the award for attorney's fees through trial.

which he bore the burden of proof must demonstrate the evidence conclusively establishes all vital facts in support of the issue. *Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 241 (Tex. 2001). When a party challenges legal sufficiency relative to an adverse finding on which he did not bear the burden of proof, we apply the "no evidence" standard and may sustain the challenge only when the record discloses one of the following situations: (a) a complete absence of evidence of a vital fact; (b) the court is barred by rules of law or evidence from giving weight to the only evidence offered to prove a vital fact; (c) the evidence offered to prove a vital fact is no more than a mere scintilla; (d) the evidence establishes conclusively the opposite of the vital fact. *Foley v. Capital One Bank, N.A.*, 383 S.W.3d 644, 646–47 (Tex. App.—Houston [14th Dist.] 2012, no pet.) (citing *City of Keller*, 168 S.W.3d at 810). The fact finder is the sole judge of witness credibility and the weight to give their testimony. *City of Keller*, 168 S.W.3d at 819.

In a factual-sufficiency review, we consider and weigh all the evidence, both supporting and contradicting the finding. *See Mar. Overseas Corp. v. Ellis*, 971 S.W.2d 402, 406–07 (Tex. 1998). A party challenging factual sufficiency relative to an adverse finding on which he bore the burden of proof must demonstrate the finding is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *See Francis*, 46 S.W.3d at 242; *Pool v. Ford Motor Co.*, 715 S.W.2d 629, 635 (Tex. 1986). A party challenging factual sufficiency relative to an adverse finding on which he did not bear the burden of proof must demonstrate the evidence supporting the finding is so weak or so contrary to the overwhelming weight of the evidence that the finding is clearly wrong and unjust. *Ellis*, 971 S.W.2d at 407; *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986) (per curiam). We may not substitute our own judgment for that of the trier of fact or pass upon the credibility of the witnesses. *See Ellis*, 971 S.W.2d at 407. The amount of evidence

necessary to affirm a judgment is far less than that necessary to reverse a judgment. *GTE Mobilnet of S. Tex. L.P. v. Pascouet*, 61 S.W.3d 599, 616 (Tex. App.— Houston [14th Dist.] 2001, pet. denied).

On appeal, neither party challenges the wording of the jury questions at issue or accompanying instructions, so we will measure sufficiency of the evidence against the questions as submitted. *See Osterberg v. Peca*, 12 S.W.3d 31, 55 (Tex. 2000); *Texas First Nat. Bank v. Ng*, 167 S.W.3d 842, 855–56 (Tex. App.— Houston [14th Dist.] 2005, pet. granted, judgm't vacated w.r.m.).

## A. Finding the Drors' breach was not excused by Mushin's prior repudiation

Anticipatory repudiation is an affirmative defense to a breach-of-contract claim. *Cook Composites, Inc. v. Westlake Styrene Corp.*, 15 S.W.3d 124, 139 (Tex. App.—Houston [14th Dist.] 2000, pet. dism'd). Thus, the Drors bore the burden of proof on this issue. Under this defensive theory, a party is discharged from its remaining duties to perform under a contract where the other party repudiates its contractual duty before the time for performance. *Id.*

The jury answered "No" to jury Questions 2, 4, and 6 (identical questions but submitted separately for each Dror party) which inquired about this issue as follows:

Was [the Dror party's] failure to comply excused?

Failure to comply by [the Dror party] is excused by Daniel Mushin's prior repudiation of the same agreement.

A party repudiates an agreement when he indicates, by his words or actions, that he is not going to perform his obligations under the agreement in the future, showing a fixed intention to abandon, renounce, and refuse to perform the agreement.

6

Dror contends the conclusive evidence, or the overwhelming weight of the evidence, established Mushin first repudiated the agreement by demanding performance inconsistent with its terms and conditioning his own performance on those demands. We disagree.

Most of the evidence relevant to the Drors' breach-of-contract issues consists of communications between counsel for the parties and AII while attempting to close the settlement: both testimony regarding oral conversations and written correspondence.[3]

The evidence reflects both parties claimed the agreement included additional terms than those reflected in the agreement announced on the record and reduced to writing. Before and after the date for closing per the parties' agreement (December 1), Mushin's counsel insisted (1) there was a mutual mistake in the agreement because Mushin was entitled to $150,000 worth of AII shares (200,000 shares)—not 150,000 shares, and (2) the twelve cash payments (due after the initial payment) should be made via post-dated checks presented at closing. Further, Mushin's counsel forwarded draft settlement documents to the Drors which included such provisions.[4] The Drors and AII insisted (1) due diligence be performed relative to Mushin's transfer of his Atlantis stock to AII in exchange for AII shares; and (2) Mushin make certain representations regarding the Atlantis

---

[3] The Drors' counsel relative to the settlement was not their primary counsel at trial and on appeal because he became a witness in the case. Mushin's counsel relative to the settlement was deceased by the time of trial. All references to a party's counsel in this discussion mean the attorneys relative to the settlement. Further, all references are to 2010 until otherwise noted.

[4] At trial, Mushin suggested his counsel was not authorized to represent to the Drors that Mushin believed the settlement required the transfer of $150,000 worth of shares. The Drors devote a portion of their appellate brief to arguing counsel's representations to the Drors were binding on Mushin. We need not address that issue; even if the statements were binding on Mushin, the Drors fail to establish the evidence is insufficient to support a finding the representations did not constitute a repudiation of the agreement excusing the Drors' breach.

stock. The evidence indicates AII's counsel was expressing these requirements as of the December 1 date originally contemplated for closing.

We construe the case as presenting a fact question for the jury on whether each party's position constituted a repudiation, which party repudiated first, and whether any repudiation by Mushin excused the Drors' failure to comply. According to the testimony of the Drors' counsel, Mushin's counsel stated in telephone conversations that Mushin refused to close if he did not receive $150,000 worth of shares. Mushin's counsel was deceased by the time of trial and thus could not controvert this testimony. Nonetheless, the jury, as sole judge of witness credibility, was not required to accept the version offered by the Drors' counsel. Accordingly, we do not construe his testimony as conclusive or overwhelming evidence in a legal and factual sufficiency review. However, the written correspondence of Mushin's counsel is necessarily uncontroverted evidence of his statements to counsel for the Drors and AII.

As Mushin emphasizes, his counsel never unequivocally stated in this correspondence that Mushin refused to close if he did not receive $150,000 worth of shares. Further, the correspondence demonstrates his counsel attempted to push the matter toward closing without delay. Therefore, the jury could have construed counsel's statements as posturing in an attempt to obtain the Drors' acquiescence regarding the number of shares or a modification of the agreement, but not a repudiation. In one correspondence, dated December 15, Mushin's counsel did assert Mushin was "not willing" to close unless he received post-dated checks. However, by that point, AII's counsel had already expressed the additional requirements relative to the exchange of AII stock for Atlantis stock. Thus, the jury could have found the Drors had repudiated before any repudiation by Mushin via his position regarding the post-dated checks.

8

In this regard, based on all the evidence, the jury could have reasonably concluded that, irrespective of Mushin's position, the Drors repudiated the agreement and it was this action which prevented the closing; i.e., they would not perform unless Mushin acquiesced in the additional requirements relative to the exchange of AII stock for Atlantis stock. Specifically, in written correspondence, AII's attorney stated AII "required" certain representations by Mushin relative to due diligence as though they were mandatory for closing. At trial, Dror Sr. acknowledged AII would not have completed the purchase of Mushin's Atlantis shares if due diligence had revealed deficiencies, such as Mushin had encumbered the shares by borrowing money against them. There is no correspondence in which the Drors stated they were ready to close but Mushin's alleged repudiation was the only obstacle to closing. Additionally, there is no correspondence in which the Drors expressed they no longer intended to proceed with their obligations under the agreement because Mushin had first repudiated. Rather, even while Mushin's counsel was asserting his position regarding the number of shares, the Drors continued to discuss the settlement with him, and AII expressed that Mushin must comply with due diligence steps as though required for closing.

Significantly, on December 15, Mushin's counsel wrote the Drors' counsel expressing he had been authorized by Mushin to proceed to trial on the underlying claims or for breach of the agreement because he viewed the Drors to be in breach. The next day, the Drors' counsel replied, "It is our position that all disputes in this case have been resolved by the Rule 11 Agreement which has been filed with the Court. **Any delays in the closing of the settlement have been caused by certain deficiencies in Atlantis which are in the process of being resolved**." (emphasis added). The Drors' counsel did not include in this correspondence any statement that the settlement had not closed because Mushin had repudiated the agreement.

9

At trial, the Drors' counsel essentially explained he did not mean to represent the Drors were the only party delaying the settlement. Rather, in response to Mushin's position concerning the number of shares, counsel was attempting to express the Drors were ready to close on their end and there was merely a delay because of due diligence. However, the jury was entitled to consider the letter based on its actual contents; it constituted some evidence the additional due diligence requirements were the only obstacle to closing, even if counsel intended to state otherwise.

The Drors contend that communications from AII's counsel imposing additional requirements cannot be attributed to the Drors because AII is a separate entity. However, Dror Sr. is CEO of AII, and the agreement, signed by the Drors, contained a requirement that the AII stock be exchanged for the Atlantis stock as though the Drors had the power to effect the transfer. To the extent the Drors lacked such power, they entered into a contract in which they promised a third-party would take certain action. Thus, the Drors assumed the risk the third-party would not perform. Consequently, the Drors may be considered to have repudiated the agreement by insisting on additional requirements even if AII made the demand.

Alternatively, considering the Drors' failure to close and make the initial cash payment together with their attempts to impose additional requirements, the jury could have rationally inferred they were trying to stall the settlement. Mushin's counsel responded to AII's correspondence by asserting the agreement contained no provision for performance of due diligence or representations by Mushin. However, at one point, Mushin's counsel also proposed Mushin might agree to some due diligence, while holding the shares subject to the agreement in escrow, if the settlement would close first; but there is no evidence the Drors agreed to that scenario.

In summary, we conclude the evidence is legally and factually sufficient to support the jury's finding that the Drors' failure to comply with the agreement was not excused by Mushin's prior repudiation. We overrule the Drors' first issue.

## B. Findings that Mushin tendered performance and was ready, willing, and able to perform

To prevail on a breach of contract claim, a party must establish the following elements: (1) a valid contract existed between the plaintiff and the defendant; (2) the plaintiff tendered performance or was excused from doing so; (3) the defendant breached the terms of the contract; and (4) the plaintiff sustained damages as a result of the defendant's breach. *West v. Triple B. Servs., LLP*, 264 S.W.3d 440, 446 (Tex. App.—Houston [14th Dist.] 2008, no pet.). Because tender is an element of a breach-of-contract claim, Mushin bore the burden to prove he tendered performance. *See id.*

The jury answered "Yes" to jury Question 12 which inquired about this issue:

> Did Daniel Mushin tender performance under the Rule 11 Agreement?
>
> Tender requires an actual or literal production of the thing to be delivered coupled with a relinquishment of it for a sufficient period of time to enable the obligee to reduce it to possession if he so desires. Tender of performance is excused under certain circumstances, such as when a tender would be futile or when the defendants have repudiated the contract.

The Drors argue there was no unconditional tender because Mushin made his performance conditioned on the Drors' acquiescence to Mushin's unilateral modification of the agreement; i.e., Mushin would not tender performance of his

obligations unless he received $150,000 worth of AII shares. The Drors further argue Mushin was not excused from tendering performance.

We rely on the same evidence discussed above relative to the repudiation analysis although a different party bore the burden of proof on the tender issue. Some evidence supports a finding that Mushin's tender was excused because it would have been futile and the Drors had first repudiated the contract via their additional requirements, irrespective of Mushin's position regarding the $150,000 worth of shares. Additionally, the evidence supporting the finding is not so weak or so contrary to the overwhelming weight of the evidence that the finding is clearly wrong and unjust.

In their second stated issue, the Drors challenge only the jury finding regarding tender; but in their argument, the Drors also briefly challenge the jury's affirmative answer to the following question.

Question 13

Was Daniel Mushin ready, willing and able to perform his obligations under the Rule 11 Agreement within a reasonable time?

Mushin testified he was willing to transfer his Atlantis stock and resign his position as an officer and director of Atlantis. He had complied with his counsel's request to have his Atlantis stock available for transfer, and counsel had prepared a written resignation. The Drors cite the testimony of a corporate securities attorney, presented at trial, as explaining the requirements to transfer publicly traded stock: "the transferor must sign a stock power and a medallion seal placed on the stock power." The Drors note Mushin did not expressly testify he was willing to take this step. Nonetheless, the jury could have inferred that Mushin's general willingness to transfer the stock encompassed a willingness to sign the document

12

necessary to effect the transfer and comply with requisite formalities. The Drors also argue Mushin presented no evidence the stock was unencumbered, which they contend was necessary to effect the transfer. However, the agreement contained no such requirement. Accordingly, the evidence is legally and factually sufficient to support the jury's finding. We overrule the Drors' second issue.

## C. Findings that the Drors failed to comply but Mushin did not fail to comply

Finally, the Drors challenge the jury's findings in response to Questions 1, 3, and 5 that the Drors failed to comply and its finding in response to Question 7 that Mushin did not fail to comply. This issue is interrelated with the Drors' other issues; they argue Mushin failed to comply by repudiating the agreement and the Drors are deemed to have tendered performance. Because we have rejected the Drors' contentions on the repudiation issue, we also overrule their third issue.

## III. ATTORNEY'S FEES

In their fourth and fifth issues, the Drors contend Mushin is not entitled to recover attorney's fees because (1) there is no evidence he presented a pre-suit demand for performance of the agreement, and (2) the evidence is legally and factually sufficient to support the award.

## A. Presentment of demand for performance

To recover attorney's fees as a successful claimant on a breach-of-contract action, (1) the claimant must be represented by an attorney, (2) the claimant must present the claim to the opposing party or to a duly authorized agent of the opposing party, and (3) payment for the just amount owed must not have been tendered before the expiration of the 30th day after the claim is presented. Tex. Civ. Prac. & Rem. Code Ann. § 38.002 (West 2008); *see id.* § 38.001(8). The

13

claimant bears the burden to plead and prove presentment. *See Ellis v.Waldrop*, 656 S.W.2d 902, 905 (Tex. 1983); *Busch v. Hudson & Keyse, LLC*, 312 S.W.3d 294, 300 (Tex. App.—Houston [14th Dist.] 2010, no pet.). Presentment of the claim is required to provide the other party with an opportunity to pay the claim before incurring an obligation for attorney's fees. *Brainard v. Trinity Universal Ins. Co.*, 216 S.W.3d 809, 818 (Tex. 2006); *Busch*, 312 S.W.3d at 300.

We review a trial court's award of attorney's fees based on breach of contract for an abuse of discretion. *Weaver v. Jamar*, 383 S.W.3d 805, 813 (Tex. App.—Houston [14th Dist.] 2012, no pet.). The test for abuse of discretion is whether the trial court's decision was arbitrary or unreasonable. *Id.*

The Drors argue any presentment of a breach-of-contract claim by Mushin was an excessive demand for performance of Mushin's alternate terms which were inconsistent with the actual terms—Mushin's position that the Drors were required to transfer $150,000 worth of AII shares, not 150,000 shares. Therefore, the Drors contend Mushin failed to present the claim on which he recovered damages—the claim based on the actual terms of the agreement—and presentment of the allegedly excessive demand precluded recovery of attorney's fees.

A creditor who presents an excessive demand to a debtor is not entitled to attorney's fees for subsequent litigation required to recover the debt. *Beauty Elite Group, Inc. v. Palchick*, No. 14-07-00058-CV, 2008 WL 706601, at *4 (Tex. App.—Houston [14th Dist.] Mar. 18, 2008, no pet.) (mem. op.) (citing *Findlay v. Cave*, 611 S.W.2d 57, 58 (Tex. 1981)). In order to preserve an excessive demand challenge, the debtor is required to (1) plead excessive demand as an affirmative defense to the claim for attorney's fees, and (2) request and obtain findings of fact regarding the essential elements of excessive demand. *Id.* at *6. Assuming

14

without deciding the Drors pleaded excessive demand or the issue was tried by consent, they did not obtain a fact finding on the theory. However, the Drors argue they may rely on this theory because it was proved as a matter of law. We disagree.

We conclude the trial court did not abuse its discretion by concluding an email dated December 15 from Mushin's counsel to the Drors' counsel constituted presentment of a claim for breach of the actual agreement:

> My client, Danny Mushin, has instructed me [sic] proceed to trial of the pending action in view of the failure of the Drors to act in good faith or to consummate the proposed settlement of the case.
> . . .
> The putative settlement agreed upon was not consummated by November 30, 2010, which breached the agreement. Such failure to consummate on the date scheduled is wholly due to the actions of the Drors, and has caused my client substantial additional legal fees.
>
> It is now obvious that the Drors do not intend to correct the parties [sic] mutual mistake in stating a number of shares of [AII] -150,000- instead of the dollar amount of $150,000.00, a keystone of the settlement. My client has instructed his counsel to amend his petition, adding alternative causes of action to modify the Rule 11 Agreement to correct the mutual mistake, **and** (as an alternative to the pending Fraud, Securities Fraud and Negligent Misrepresentation[)], **enforcement of the Rule 11 Agreement as a contract**, and to request a trial date. In that regard, my client will seek additional reasonable attorneys [sic] fees as provided under Texas Statutes, **if the Rule 11 Agreement is not consummated** within 30 days from the date of this communication.

(emphasis added).

We disagree with the Drors' contention that Mushin's counsel made clear the Drors could comply with the agreement, and thereby avoid payment of attorney's fees, only by transferring $150,000 worth of shares. Based on the

above-emphasized portions, the email may be construed as a demand the Drors comply with the actual agreement—"the Rule 11 Agreement"—albeit with a threat that Mushin would also seek modification of the terms if the Drors failed to comply. The email may be construed as counsel expressing Mushin would present alternative positions in a future breach-of-contract action: a claim for breach of the actual agreement; and a request for modification of the agreement. Accordingly, the trial court acted within its discretion by concluding Mushin presented the claim on which he ultimately recovered. Therefore, the Drors did not establish as a matter of law that Mushin presented an excessive demand by insisting on payment under the alternate terms advanced by Mushin. We overrule the Drors' fourth issue.

## B. Sufficiency of the evidence

The Drors contend the evidence is legally and factually insufficient to support the award of attorney's fees for two reasons.

First, the Drors contend the evidence is insufficient to support the liability findings prerequisite to recovery of attorney's fees, in light of their liability arguments discussed above. We summarily reject this contention because of our disposition of the liability issues.

Second, the Drors contend the evidence is insufficient to support the finding that an award of $33,500 (after voluntary remittitur) for attorney's fees through trial was reasonable. The Drors rely on the fact that, when the settlement failed to close, Mushin amended his petition to add a claim for breach of the settlement agreement. In the petition, Mushin pleaded the agreement intended to require transfer of $150,000 worth of AII shares—not 150,000 shares—and it is this agreement which the Drors breached. Mushin also requested reformation of the

16

agreement to reflect the parties' purported actual agreement. It was not until two weeks before trial that Mushin again amended his petition, this time acknowledging the terms of the agreement as announced on the record but pleading the Drors breached the agreement. The Drors suggest Mushin was limited to recovering fees incurred beginning two weeks before trial because any prior fees were incurred for a claim which was not advanced at trial—Mushin's position the agreement should be modified to require transfer of $150,000 worth of shares. The Drors request a remand for a determination of the amount of reasonable and necessary fees incurred to advance the claim on which Mushin recovered.

Although Mushin did not formally amend his petition to allege breach of the actual agreement until two weeks before trial, the record negates that all attorney services performed before that date related to the claim for modification. For instance, the record includes Mushin's previous motion for summary judgment requesting damages for breach of the actual agreement. Moreover, since the settlement failed to close, Mushin has always pleaded breach of the agreement— whether the agreement as it should allegedly be modified, or the actual agreement. As discussed above, the evidence supports a finding that the Drors breached the agreement and committed the first repudiation by imposing additional terms, irrespective of Mushin's position regarding the $150,000 worth of shares. Consequently, the jury could have found Mushin incurred attorney's fees from the outset to prove the Drors breached the agreement, irrespective of Mushin's vacillating pleadings regarding the number of shares he was entitled to receive. Accordingly, we reject the proposition that Mushin was entitled only to fees incurred beginning two weeks before trial.

Regardless, the Drors essentially contend Mushin was required to segregate fees between those incurred on the claim for which he recovered (breach of the actual agreement) and those incurred on the abandoned claim (for modification). However, the relevant jury question did not require segregation of the fees incurred solely to advance the claim for breach of the actual agreement or fees incurred beginning two weeks before trial. Instead, the question inquired generally about "a reasonable fee, if any, for the necessary services" of Mushin's attorney, with no limitation on the specified "services" or the claim for which they were incurred and no instruction regarding segregation. The Drors did not object to the lack of any requirement in the jury charge that attorney's fees be segregated. Therefore, the Drors waived their appellate contention that Mushin was required to segregate fees. *See 2001 Trinity Fund, LLC v. Carrizo Oil & Gas, Inc.*, 393 S.W.3d 442, 459 (Tex. App.—Houston [14th Dist.] 2012, pet. filed) (citing *Green Int'l, Inc. v. Solis*, 951 S.W.2d 384, 389 (Tex. 1997); *Bencon Mgmt. & Gen. Contracting, Inc. v. Boyer, Inc.*, 178 S.W.3d 198, 208 (Tex. App.—Houston [14th Dist.] 2005, no pet.)).

The Drors attempt to avoid the consequence of failing to object by characterizing their complaint as a challenge to sufficiency of the evidence supporting the amount of attorney's fees awarded. However, we measure sufficiency of the evidence against the jury question, as submitted. *See Osterberg*, 12 S.W.3d at 55; *Ng*, 167 S.W.3d at 855–56. Because the question did not require segregation, the evidence is sufficient to support the jury's finding regarding the amount of reasonable and necessary fees. Accordingly, we overrule the Drors' fifth issue.

We affirm the trial court's judgment.

/s/     John Donovan
Justice

Panel consists of Justices Boyce and Donovan.[5]

---

[5] Chief Justice Hedges was assigned to the panel for this case and participated during oral argument and in the memorandum opinion issued July 23, 2013. However, she subsequently retired from the court and did not participate in this substitute memorandum opinion. *See* Tex. R. App. P. 41.1(b) ("After argument, if for any reason a member of the panel cannot participate in deciding a case, the case may be decided by the two remaining justices.").