**Affirmed as Modified and Opinion filed October 30, 2012.**



In The

# Fourteenth Court of Appeals

NO. 14-11-00516-CV

ANEITA J. WEAVER, Appellant,

V.

JOHN JAMAR, Appellee.

On Appeal from the 165th District Court
Harris County
Trial Court Cause No. 2010-35915

## OPINION

This is a contract dispute between appellant Aneita J. Weaver and her nephew, appellee John Jamar. It arises from a loan Weaver made to Jamar enabling him to purchase a townhouse, which he was to renovate and ultimately resell for profit. Following a bench trial, the trial court awarded title of the property and attorney's fees to Weaver while awarding construction expenses to Jamar—all at five-percent post-judgment interest. The trial court also held Jamar liable for unpaid taxes and fees related to the property. Weaver appeals. We affirm as modified in part.

I

On August 11, 2008, Jamar approached Weaver with a written loan agreement, which the parties modified and signed without legal representation. In full, the agreement provides:

> I, Aneita J. Weaver, agree to lend $193,000, to John Jamar to purchase property described as
>
> 18142 Bal Harbour Dr., Nassau Bay, Harris County Texas, Lot 9, Block 3, of Bal Harbour Cove, presently owned by Michael Schwendeman, on this day, August 11, 2008. The Loan is dated August 11, 2008.
>
> The money is loaned at the rate of eight percent (8%), for a period of one year from the date of the loan.
>
> John Jamar will make monthly loan payments of $1,400.00 to Aneita J. Weaver in the form of a bank check until [The remainder of this line is blacked out.]
>
> This property is being purchased by John Jamar with the intention of improving the property and selling it by Jan. 1, 2010.
>
> Improvements and costs of all improvements shall be mutually agreed on and signed off on by each party prior to funds being expended. John Jamar will handle all improvements, including labor and materials.
>
> John Jamar will be responsible for the cost of Home Owners Insurance on the property, Home Owners Association expenses, State and local taxes for the period prior to the sale of the property.
>
> When the property is sold, John Jamar will repay the balance of the loan to Aneita J. Weaver.
>
> Any net profit after payment of all expenses for the sale of property to a third party and repayment of the loan to Aneita J. Weaver will be divided as follows:
>
> Aneita J. Weaver will receive 20% of the net profit from the sale after all improvement expenses to the property are deducted from the net sale price. That is, any money over and above the sale price after improvement

expenses, will be split as follows: John Jamar: 80% and Aneita J. Weaver, 20%.

The loan agreement also includes an addendum, which reads:

> If the above described property does not sell, by the time set out, the following shall be in effect:
>
> 1. Aneita J. Weaver has the right to assume the title to the property free and clear from John Jamar, for the balance of the loan
> OR
> 2. If agreed by Aneita J. Weaver, John Jamar will continue to pay monthly loan installments to Aneita Weaver, in the amount of $1,438.19, until the property is sold, with the same terms as set out for a sale prior to January 1, 2010.

On the same day on which the parties signed the agreement, Weaver loaned Jamar $193,000, and Jamar purchased the property. He received a general warranty deed in his name only.

Despite his obligations under the agreement, Jamar neither completed renovations nor sold the property by January 1, 2010. Additionally, he made only two of his required payments: the first was a $1,400 payment to Weaver in October 2008; the second was to the homeowners' association ("HOA") in 2010, which he made in an effort to deter foreclosure of the HOA's lien on the property. Jamar owes more than $9,000 for unpaid charges, maintenance assessments, and attorney's fees to the HOA, as well as more than $30,000 in unpaid taxes to Harris County and Clear Creek Independent School District.

Weaver sued, seeking specific performance under the loan agreement and money judgments for the amounts of the liens on the property, the unpaid interest, and attorney's fees. Jamar did not file a counterclaim.

At trial, Ted Hirtz appeared as Weaver's attorney, and Jamar represented himself. Weaver testified that the townhouse was "in total disarray" and "in a state of half or third rebuilt." She also submitted billing records showing total attorney's fees of $60,415.

3

Hirtz testified and acknowledged that the legal fees in this case "are extraordinarily high," which he attributed, in large part, to Jamar's uncooperative behavior. Jamar testified that he spent over $50,000 for labor and materials to renovate the townhouse. He also submitted a document titled "18142 Bal Harbour balance" in which he calculated the projected income from the sale of the property and included the notation: "Paid: $62,000.00—construction."

In a judgment signed May 10, 2011, the trial court (1) ordered Jamar to convey title and possession of the property to Weaver; (2) found Jamar liable for any unpaid HOA expenses, as well as any state and local taxes accrued as of the date of the judgment; (3) decreed that Jamar would no longer be liable under the loan agreement after transferring title to Weaver; (4) awarded Jamar "the reasonable value of work performed and materials furnished in the amount of $62,000"; and (5) awarded Weaver "$36,500 for necessary and reasonable attorneys' fees and expenses." The trial court further ordered that all amounts bear post-judgment interest of five percent per annum, citing section 504 of the Texas Finance Code. Upon Weaver's request, the trial court issued findings of fact and conclusions of law. Weaver then appealed.

II

On appeal, Weaver argues the trial court erred by: (1) awarding any money to Jamar absent a counterclaim; (2) effectively rewriting the loan agreement; (3) awarding $62,000 to Jamar in the absence of evidence showing that Weaver agreed in writing to those improvements or that the improvements increased the value of the property; (4) failing to enforce the eight-percent interest rate mandated by the loan agreement; (5) cancelling the balance of the loan in consideration for transferring the encumbered title to Weaver; (6) failing to award Weaver a money judgment in the amount of the unpaid taxes and fees; (7) interpreting the contract as one to purchase real property rather than as a loan agreement and issuing misleading findings of fact; (8) failing to award a single money judgment to Weaver as required by Rule 302 of the Texas Rules of Civil

4

Procedure; and (9) failing to award Weaver the full amount of the attorney's fees she demonstrated.

Several of Weaver's issues overlap such that resolution of one issue is dispositive of another. Specifically, our holdings on her third, fourth, and sixth points of error are dispositive of the issues in Weaver's first, second, fifth, seventh, and eighth points. Therefore, we do not separately examine the latter issues.

## III

Weaver's third and fourth issues both relate to interpretation of the loan agreement. Because these issues are interrelated, we address them together. Further, our resolution of these issues is dispositive of the issues Weaver asserts in her second and eighth points of error, so we do not consider them separately.

## A

Whether a contract is ambiguous is a question of law. *J.M. Davidson, Inc. v. Webster*, 128 S.W.3d 223, 229 (Tex. 2003). The interpretation of an unambiguous contract is a question of law, and we review a trial court's interpretation de novo. *MCI Telecomms. Corp. v. Tex. Utils. Elec. Co.*, 995 S.W.2d 647, 650–51 (Tex. 1999); *Deep Water Slender Wells, Ltd. v. Shell Int'l Exploration & Prod., Inc.*, 234 S.W.3d 679, 687 (Tex. App.—Houston [14th Dist.] 2007, pet. denied). In construing a written contract, the court's primary concern is to ascertain the true intentions of the parties as expressed in the instrument. *Seagull Energy E & P, Inc. v. Eland Energy, Inc.*, 207 S.W.3d 342, 345 (Tex. 2006); *Forest Oil Corp. v. Eagle Rock Field Servs., LP*, 349 S.W.3d 696, 699 (Tex. App.—Houston [14th Dist.] 2011, no pet.). We presume the parties to the contract intended every clause to have some effect. *Heritage Res., Inc. v. NationsBank*, 939 S.W.2d 118, 121 (Tex. 1996). Courts give contract terms their plain, ordinary, and generally accepted meanings unless the contract itself shows that the parties intended to use terms in a technical or different sense. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 662 (Tex. 2005). We construe contracts from a utilitarian standpoint, bearing in

mind the particular business activity the contracting parties seek to serve. *Frost Nat'l Bank v. L & F Distribs., Ltd.*, 165 S.W.3d 310, 312 (Tex. 2005). We will avoid, whenever possible and proper, a construction that is unreasonable, inequitable, and oppressive. *Id.*

A contract is ambiguous when its meaning is uncertain and doubtful or reasonably susceptible to more than one interpretation. *Heritage Res.*, 939 S.W.2d at 121. A contract is not ambiguous simply because the parties advance conflicting interpretations. *Columbia Gas Transmission Corp. v. New Ulm Gas, Ltd.*, 940 S.W.2d 587, 589 (Tex. 1996); *see Coterill-Jenkins v. Tex. Med. Ass'n Health Care Liab. Claim Trust*, No. 14-11-00697-CV, ___ S.W.3d ___, 2012 WL 3524985 at *4 (Tex. App.—Houston [14th Dist.] Aug. 16, 2012, no pet. h.). We determine whether a contract is ambiguous by looking to the contract as a whole in light of the circumstances present when the parties executed it. *Forest Oil*, 349 S.W.3d at 699. The contract is not ambiguous if it can be given a certain or definite meaning. *Universal Health Servs., Inc. v. Renaissance Women's Grp., P.A.*, 121 S.W.3d 742, 746 (Tex. 2003). Ultimately, courts must enforce contract terms as written and may not rewrite contracts or add to their language under the guise of interpretation. *Reliance Ins. Co. v. Hibdon*, 333 S.W.3d 364, 369 (Tex. App.—Houston [14th Dist.] 2011, pet. denied); *see David J. Sacks, P.C. v. Haden*, 266 S.W.3d 447, 450 (Tex. 2008) (per curiam).

1

In her third issue, Weaver argues that the trial court erred by awarding Jamar $62,000 for materials and labor without evidence that Weaver approved in writing of those expenses. The loan agreement specifically provides: "Improvements and costs of all improvements shall be mutually agreed on and signed off on by each party prior to funds being expended." Jamar presented no evidence that Weaver signed off on any of the work he did or the money he spent on the townhouse. And, in fact, Jamar admitted on the witness stand that he had "not kept in touch" with Weaver during renovations. Because

there is no evidence Weaver signed off on any of the work performed or money spent on the townhome, Jamar cannot recover these amounts under the unambiguous language of the loan agreement.

Quantum meruit is the only other conceivable theory under which Jamar could recover his construction expenses. But Jamar did not plead quantum meruit below,[1] nor was this claim tried by consent.  In addition, the loan agreement is a valid contract. Either one of these facts is sufficient grounds for denying a quantum-meruit claim. *See Dobbins v. Redden*, 785 S.W.2d 377, 378 (Tex. 1990) (per curiam) ("The failure to plead quantum meruit is more than relevant to the outcome of this case; it is dispositive."); *Woodard v. Sw. States, Inc.*, 384 S.W.2d 674, 675 (Tex. 1964) ("Recovery on an express contract and on quantum meruit are inconsistent. Where there exists a valid express contract, covering the subject matter, there can be no implied contract."). Further, the record does not support the implied findings necessary to uphold the judgment on a quantum-meruit theory. *See Am. Nat'l Ins. Co. v. Paul*, 927 S.W.2d 239, 245 (Tex. App.—Austin 1996, writ denied). To recover in quantum meruit, a claimant must prove (1) valuable services were rendered or materials furnished; (2) for the person sought to be charged; (3) which services and materials were accepted by the person sought to be charged; (4) under such circumstances as reasonably notified the person sought to be charged that the plaintiff in performing such services was expecting to be paid by the person sought to be charged. *Myrex Indus., Inc. v. Ortolon*, 126 S.W.3d 548, 550 (Tex. App.—Houston [14th Dist.] 2003, pet. denied).

The trial court  found that Jamar "constructed improvements on the [p]roperty and furnished labor and materials therein in the amount of $62,000.00." Based solely on this finding, the trial court ordered Weaver to pay Jamar a money judgment in that amount. The trial court specifically found the first element, though the last two elements are

---

[1] Weaver makes this argument in her first issue. We do not address that argument, however, because we dispose of the award on contract grounds.

7

clearly absent. Weaver's testimony—in which she complained that the townhouse was in "total disarray" and that she estimated the remodeling was no more than halfway complete—illustrates that she did not accept Jamar's construction. Further, she had no way of knowing Jamar was doing work he expected to be paid for. The loan agreement clearly states that, following the sale of the townhouse, Jamar would use the proceeds first to repay Weaver for the balance of the loan and only then to pay the costs of the renovation. Additionally, the addendum provided Jamar with no right to recover his expenses if he failed to sell the townhouse. Thus, according to the agreement's language, both parties understood that Jamar had only a conditional right to repayment. It follows that Weaver could not have known that Jamar expected to be reimbursed absent a sale when the loan agreement clearly provided otherwise. The evidence simply does not support the implied findings necessary to uphold the trial court's award of $62,000 to Jamar. *See Myrex Indus.*, 126 S.W.3d at 550; *Paul*, 927 S.W.2d at 245.

We therefore sustain Weaver's third issue and modify the trial court judgment to delete the $62,000 award to Jamar. We do not examine Weaver's first or seventh issues, which attack the award on other grounds. In light of this ruling, it is also unnecessary to address Weaver's eighth issue.

2

In her fourth issue, Weaver argues that the trial court erred by failing to award her a money judgment equal to the unpaid interest on the loan. The loan agreement explicitly provides: "The money is loaned at the rate of eight percent (8%), for a period of one year from the date of the loan." Citing our decision in *Fein v. R.P.H.*, she notes that a court has no authority to disregard a contractual provision solely because the provision is inartfully written. *See* 68 S.W.3d 260, 266 (Tex. App.—Houston [14th Dist.] 2002, pet. denied) ("We presume the parties to the contract intended for every clause to have some effect."). While that is an accurate representation of the rule we recited in *Fein*, Weaver misapplies the rule in order to avoid the express terms of the loan agreement. The parties defined the

8

remedy that would apply should Jamar fail to sell the townhouse as follows: "Aneita J. Weaver has the right to assume the title to the property free and clear from John Jamar, for the balance of the loan." The plain and ordinary meaning of the term "balance" includes both principal and interest, and the contract does not show that the parties intended to use a different meaning. *See Valence Operating Co.*, 164 S.W.3d at 662. This provision is unambiguous: Weaver's exercise of her right to get title to the townhouse extinguishes the balance of the loan, including interest.

Parties to a contract are free to limit or modify the remedies available for breach of their agreement. *See* Tex. Bus. & Com. Code § 2.719; *SAVA gumarska in kemijska industria, D.D. v. Advanced Polymer Servs., Inc.*, 128 S.W.3d 304, 317 (Tex. App.—Dallas 2004, no pet.). If the parties agree to a contractual remedy, a court will enforce that remedy unless it is illegal or against public policy. *Advanced Polymer*, 128 S.W.3d at 317. This is part of our duty to determine and enforce the true intent of the parties involved. *See Forest Oil*, 349 S.W.3d at 699. Here, Weaver does not allege—and the record does not show—that the contractual remedy provided under the loan agreement is illegal or against public policy. Accordingly, we overrule her fourth issue, and we do not separately consider her fifth issue, which similarly attacks the trial court's interpretation of the contract.

IV

In her sixth issue, Weaver argues that the trial court erred by failing to award Weaver a money judgment in the amount necessary to pay off those encumbrances and clear the title.

The trial court's judgment reads: "The Court ORDERS and DECREES that John Jamar is liable for any unpaid Home Owners Association Expenses, State and Local Taxes accrued as of the date of this Judgment." Although the judgment does not state to whom Jamar is liable, the trial court specified in its conclusions of law that "Jamar is liable *to Aneita Weaver* for any unpaid Home Owners Association Expenses, State and

9

Local Taxes accrued as of the date of this Judgment" (emphasis added). We conclude that the trial court erred by failing to render judgment against Jamar and in favor of Weaver for the amount of unpaid and accrued taxes and homeowners' association charges.

Accordingly, we sustain Weaver's sixth issue and modify the judgment of the trial court to reflect that Jamar is liable to Weaver for unpaid homeowners' association expenses in the amount of $9,295.79, and state and local taxes in the amount of $30,316.01.[2] The judgment is modified to provide that Weaver shall have and recover these sums from Jamar.

V

In Weaver's ninth and final issue, she argues that the trial court abused its discretion by failing to award her the full amount of attorney's fees she demonstrated.

Texas law prohibits recovery of attorney's fees unless authorized by statute or contract. *Tony Gullo Motors I, L.P. v. Chapa*, 212 S.W.3d 299, 310 (Tex. 2006). A prevailing party on a breach-of-contract claim may recover "reasonable" attorney's fees. Tex. Civ. Prac. & Rem. Code § 38.001(8). We review a trial court's award of attorney's fees based on breach of contract for an abuse of discretion. *See, e.g.*, *Llanes v. Davila*, 133 S.W.3d 635, 640 (Tex. App.—Corpus Christi 2003, pet. denied) (citing *Ragsdale v. Progressive Voters League*, 801 S.W.2d 880, 881 (Tex. 1990) (per curiam)). The test for an abuse of discretion is whether the trial court's decision was arbitrary or unreasonable. *Id.* (citing *Beaumont Bank, N.A. v. Buller*, 806 S.W.2d 223, 226 (Tex. 1991)).

In determining the reasonableness of attorney's fees, the trial court should consider the following factors:

---

[2] Specifically, $9,295.79 reflects Weaver's evidence that Jamar owed the HOA $6,284.13 for outstanding payments and an additional $3,011.66 for attorney's fees. To prove Jamar's unpaid taxes, Weaver introduced a tax statement from the Clear Creek Independent School District, which demonstrated that if the outstanding balance was paid in May 2011, the total amount due would be $15,588.10. She also introduced a property tax statement, which demonstrated that if the outstanding balance was paid by May 31, 2011, the total amount due would be $14,727.91. The sum of those two amounts is $30,316.01.

(1) the time and labor required, the novelty and difficulty of the questions involved, and the skill required to perform the legal service properly; (2) the likelihood . . . that the acceptance of the particular employment will preclude other employment by the lawyer; (3) the fee customarily charged in the locality for similar legal services; (4) the amount involved and the results obtained; (5) the time limitations imposed by the client or by the circumstances; (6) the nature and length of the professional relationship with the client; (7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and (8) whether the fee is fixed or contingent on results obtained or uncertainty of collection before the legal services have been rendered.

*Arthur Andersen & Co. v. Perry Equip. Corp.*, 945 S.W.2d 812, 818 (Tex. 1997). A litigant need not present evidence on each of these factors. *Acad. Corp. v. Interior Buildout & Turnkey Constr., Inc.*, 21 S.W.3d 732, 742 (Tex. App.—Houston [14th Dist.] 2000, no pet.). The trial court may also consider the entire record, the evidence presented on reasonableness, the amount in controversy, the common knowledge of the participants as lawyers and judges, and the relative success of the parties. *Rapid Settlements, Ltd. v. Settlement Funding, LLC*, 358 S.W.3d 777, 786 (Tex. App.—Houston [14th Dist.] 2012, no pet.).

At trial, Weaver used billing statements and Hirtz's testimony to demonstrate $60,415 in attorney's fees. In his testimony, Hirtz admitted that "[t]he legal fees in this case are extraordinarily high," which he attributed in some measure to Jamar's allegedly uncooperative behavior. Hirtz explained that his work on the case included preparing a petition and a lis pendens; unsuccessfully attempting to serve Jamar; effectuating substituted service; filing an amended petition; attempting mediation; preparing for the first trial date (which was delayed when the judge fell ill); filing a motion for summary judgment; and preparing for the rescheduled trial.

"Generally, the trial court enjoys wide discretion in awarding attorney's fees, and this [c]ourt will not overturn its decision absent abuse of that discretion." *McNamara v. Fulks*, 855 S.W.2d 782, 784 (Tex. App.—El Paso 1993, orig. proceeding). After reviewing the record under the applicable standard of review, we conclude the trial court

11

did not err in failing to award Weaver the full amount of attorney's fees that she sought. We therefore overrule Weaver's ninth issue.

* * *

We modify the judgment (1) to delete the trial court's $62,000 award to Jamar for his renovation expenses and (2) to reflect that Jamar is liable to Weaver for $9,295.79 in unpaid homeowners' association expenses and $30,316.01 in unpaid state and local taxes, and we affirm the judgment as modified.

/s/     Jeffrey V. Brown
           Justice

Panel consists of Justices Frost, Brown, and Christopher.