**Opinion issued December 3, 2015**



In The

# Court of Appeals

For The

# First District of Texas

————————————

## NO. 01-14-00825-CV

————————————

**RAJINDER SINGH, RITA KAUR, RAJIV CHHABRA, AND GAURI CHHABRA, Appellants**

**V.**

**SLAWOMIR J. SKIBICKI AND A & SKIPOL, INC., Appellees**

---

**On Appeal from the 11th District Court**
**Harris County, Texas**
**Trial Court Case No. 2013-76488**

---

## MEMORANDUM OPINION

Appellees, Slawomir J. Skibicki and A & Skipol, Inc. (collectively, "Skibicki"), entered into a commercial real estate development project with several

individuals and entities ("the remaining owners"), including the four appellants in this case, Rajinder Singh, Rita Kaur, Rajiv Chhabra, and Gauri Chhabra (collectively, "Singh"). Skibicki later sued the remaining owners for breach of a settlement agreement and sought actual damages or, alternatively, specific performance of the terms of the agreement. Skibicki moved for summary judgment on his own claims, and the trial court ultimately rendered summary judgment in his favor. In four issues, Singh contends that: (1) the trial court erred in awarding Skibicki specific performance; (2) the settlement agreement limited Skibicki's remedies to specific performance and injunctive relief, and he was not entitled to "specific performance of payment or a judgment for damages"; (3) the trial court improperly overruled his objections to Skibicki's summary judgment evidence; and (4) Skibicki failed to establish that he complied with his obligations under the settlement agreement.

We affirm.

## Background

In 2010, Skibicki invested in a real estate project involving the development of condominiums and commercial retail units in Houston ("the Project") alongside the remaining owners, including the four appellants in this case—Singh, Kaur, and the Chhabras—and several other individuals and entities, including Indopol Houston, LLC, Naseem Hussain, Tahera Chowdhury, Enterprise Houston, Inc.,

2

Sharif Choudhury, SCH Investments, LLC, Amir Hussain, and SCH-Trident, Ltd.[1]

Skibicki invested over $1.5 million in the Project and obtained a 15% ownership interest in Indopol Houston.

Over the course of the next two years, the parties were involved in numerous disputes concerning the Project and the operation of Indopol Houston. In 2012, Skibicki and the remaining owners entered into a Compromise Settlement Agreement and Release ("the Agreement"), in which they agreed to release all claims against each other except for those arising out of the Agreement itself. The remaining owners also agreed to purchase Skibicki's ownership interest in Indopol Houston for $1,776,475. The parties agreed to the following payment schedule:

> (i) The sum of $400,000.00 (the "Initial Payment") shall be due and payable on or before March 31, 2013. If, at any time prior to March 31, 2013, the [remaining owners] close on the sale of any condominium unit in Building 1 of the Project, [the remaining owners] shall pay to [Skibicki] the sum of $20,000.00 per unit and such amount shall be applied toward the Initial Payment. Such amount shall be due and payable upon the closing of the sale of each unit and [Skibicki] shall execute and deliver to [the remaining owners] a Partial Release of the Deed of Trust (described in subparagraph (iv) below) covering such unit. Notwithstanding the number of units sold on or before March 31, 2013, the full amount of the Initial Payment shall be paid no later than March 31, 2013.

---

[1] Of the remaining owners, only Singh, Kaur, the Chhabras, Tahera Chowdhury, Sharif Choudhury, and Enterprise Houston, Inc., appealed the trial court's summary judgment ruling. Chowdhury, Choudhury, and Enterprise Houston voluntarily moved to dismiss their appeal, and this Court granted that motion on December 11, 2014. Thus, the only remaining appellants are Singh, Kaur, and the Chhabras.

(ii) The remainder of the Purchase Price, being $1,376,475.00 (the "Final Payment"), shall be due and payable on or before October 31, 2013; provided, however, [the remaining owners] shall be entitled to eight (8) extensions of one (1) month each, provided that upon each monthly extension the Purchase Price shall be increased by $8,000.00 for the first five (5) extensions and by $10,000.00 for the next three (3) extensions. If all eight (8) extensions are exercised, the Final Payment shall be $1,446,475.00 and shall be due and payable on June 30, 2014. In the event that [Skibicki] has not received the Final Payment by the then required due date, then it shall be deemed that [the remaining owners] have exercised their right for an extension.

The Agreement provided that the remaining owners would execute both a deed of trust and a security agreement for Skibicki's benefit to secure their payment of the purchase price for his ownership interest in Indopol Houston. The Agreement required Skibicki to execute and deliver an assignment of his membership interest in Indopol Houston.

The Agreement also included the following provisions relevant to Skibicki's remedies in the event the remaining owners defaulted on their obligations:

5. LIMITATION ON [SKIBICKI'S] REMEDIES. Upon any default by [the remaining owners] under this Agreement, including but not limited to, [the remaining owners'] failure to timely pay to [Skibicki] the Purchase Price in accordance with Paragraph 2.G of this Agreement, [Skibicki's] sole and exclusive remedy shall be to enforce the specific terms of this Agreement and/or exercise its rights under the Deeds of Trust and Security Agreement securing [Skibicki].

. . . .

7. REMEDIES. For the enforcement of any of the provisions of this Agreement, each party shall have the rights to specific performance and injunctive relief in the broadest sense necessary to

4

effect the protection and rights which the party has acquired under this Agreement. Further, [Skibicki's] recordation of the Deed of Trust without providing [the remaining owners] with notice and opportunity to cure as required by Paragraph 2(G)(vi) will cause [the remaining owners] to sustain loss and damage which will be difficult to ascertain and measure, and for which [the remaining owners] will have no adequate remedy at law. It is, therefore, reasonable and necessary that [the remaining owners] be accorded the equitable remedies of specific performance and injunctive relief.

Skibicki and all of the remaining owners signed the Agreement.

On December 20, 2013, Skibicki filed suit against the remaining owners, alleging that he had complied with all conditions precedent to recovery and that the remaining owners had not fulfilled their payment obligations under the Agreement. Skibicki sought actual damages in his original petition for the remaining owners' breach of the Agreement, and he later amended his petition to seek specific performance under section five of the Agreement. Skibicki alleged that if he could not collect damages from the remaining owners, he would not have an adequate remedy at law to compensate for the remaining owners' breach, that he was "ready, willing, and able to perform" under the Agreement, and that he had performed his obligations under the Agreement.

Skibicki moved for summary judgment on his claim for breach of the Agreement. Skibicki argued that the remaining owners breached the Agreement when they failed to timely pay the purchase price for Skibicki's membership interest in Indopol Houston. He argued that, as a result, he had incurred damages

5

in the amount of $1,846,475 and that he should recover that amount either as actual damages or through specific performance of the remaining owners' payment obligations under the Agreement.

As summary judgment evidence, Skibicki attached his affidavit, in which he generally described his course of dealing with the remaining owners, as well as the remaining owners' obligations under the Agreement. He averred that the remaining owners "have not timely delivered payment to me and thus failed to meet their obligations under the Agreement." He also averred that he was entitled to specific performance under the Agreement and that he "was ready to perform and did perform [his] obligations under the Agreement." He also attached a copy of the Agreement signed by all parties as summary judgment evidence, although this copy was not accompanied by either the deed of trust or the security agreement referenced within the Agreement and executed by the remaining owners, nor was the Agreement accompanied by a business records affidavit.

The remaining owners responded and raised numerous objections to Skibicki's summary judgment evidence. The remaining owners also argued that Skibicki was not entitled to actual damages because the Agreement contained a provision that limited his remedies to either specific performance and/or exercising his rights under the deed of trust and security agreement. The remaining owners then argued that, in this case, "an award of specific performance by this Court

6

would be impractical and not proper under Texas law." The remaining owners argued that specific performance is only appropriate in cases in which no adequate remedy at law exists, and they argued that an adequate remedy at law is available in this case because Skibicki could exercise his rights under the deed of trust and security agreement. The remaining owners specifically stated in their response that the "Plaintiffs and all the Defendants in the current litigation" entered into the Agreement.

The trial court held a hearing on Skibicki's summary judgment motion on August 11, 2014, and, one day later, Skibicki filed an amended summary judgment motion. Skibicki made the same arguments for why summary judgment should be granted in his favor, but he acknowledged that the remaining owners had paid him $200,000. Thus, he sought either actual damages in the amount of $1,646,475 or specific performance of payment of this amount under the terms of the Agreement.

As summary judgment evidence, Skibicki again attached an affidavit, in which he averred:

> In November 2012, I (along with A & Skipol, Inc., an entity under my control) and Defendants entered into the Compromise Settlement Agreement and Release ("the Agreement"). A true and correct copy of the Agreement is attached to Plaintiff's Amended Motion for Summary Judgment as Exhibit "B." The Defendants and I, along with our attorneys, negotiated the Agreement. I signed and approved it, as did all of the Defendants. True and correct copies of the Agreement have been attached as Exhibits to Defendants' *Motion to Transfer Venue* and *Response to Motion to Sever*. Under the Agreement, the Defendants agreed to extricate me from the Project in exchange for a

7

release of claims. Defendants agreed to purchase my interest in the Project for $1,776,475.00 ("the Indebtedness"). The Agreement also provides that if the final installment is not timely received by October 31, 2013, Defendants agree to purchase monthly extensions for up to eight consecutive months until payment is delivered in full. The first five extensions cost $8,000.00 each; the next three cost $10,000.00 each. As of the date of this Motion, Defendants have purchased all extensions for $70,000.00. Defendants have not timely delivered payment to me and thus failed to meet their obligations under the Agreement. The amount owed to me under the Agreement is $1,846,475.00. However, the defendants in this lawsuit ("Defendants") have paid $200,000.00 of the total amount owed to me. Therefore, after accounting for all proper offsets, Defendants owe me $1,646,475.00.

I am entitled to recover damages equal to the Indebtedness plus the late-payment extensions. My total damages are $1,646,475.00. Alternatively, I am entitled to specific performance under the Agreement. Also, I was ready to perform and did perform my obligations under the Agreement by transferring my interest in Indopol Houston, LLC to Defendants.

Skibicki also attached as evidence a signed copy of the Agreement, a notice of default sent by Skibicki's attorney to Rajiv Chhabra after the remaining owners failed to make the Initial Payment under the Agreement, a copy of the Agreement signed only by Skibicki with an attached copy of the security agreement, and a signed assignment of his 15% membership interest in Indopol Houston to the remaining owners.

The remaining owners again filed a response in which they stated that "Plaintiffs and all the Defendants in the current litigation" entered into the Agreement. The remaining owners objected to several statements in Skibicki's

8

affidavit, including Skibicki's statements concerning the terms of the Agreement as hearsay and not the best evidence of the Agreement. The remaining owners objected to Skibicki's statement of the amount owed to him as conclusory, and they objected that Skibicki's "affidavit conflicts with the terms and conditions of the Agreement that provides for [Skibicki's] available remedies in the event of breach of the Agreement" as impermissible parol evidence. The remaining owners objected to the copy of the Agreement on the basis that Skibicki did not properly authenticate their signatures to the Agreement and that the Agreement was inadmissible hearsay because it was not accompanied by a business records affidavit. The remaining owners objected to the assignment of interest on the basis that it was inadmissible hearsay because it was not accompanied by a business records affidavit and on the basis that it was irrelevant to the question of whether the remaining owners had paid Skibicki pursuant to the Agreement.

The remaining owners argued that Skibicki failed to present admissible evidence of a valid and enforceable agreement and evidence "that the Responding Defendants breached the agreement because the applicable allegations in the affidavits, the compromise settlement agreement, notice of default, and assignment of interest are inadmissible." The remaining owners again argued that Skibicki was not entitled to actual damages under the Agreement because it limited his remedies to "specific performance of the terms of the Agreement and/or exercising

9

[Skibicki's] rights under the Deeds of Trust and Security Agreement." The remaining owners contended that because Skibicki failed to attach an admissible copy of the deed of trust or security agreement to his summary judgment motion, the trial court should deny summary judgment.

On September 12, 2014, the trial court granted Skibicki's summary judgment motion, ruling that Skibicki was entitled to specific performance and that the remaining owners were required to perform the Agreement by paying Skibicki $1,646,475. The trial court also awarded Skibicki $19,242 in trial-level attorney's fees and a total of $6,000 in conditional appellate-level attorney's fees. In a separate order, the trial court overruled all of the remaining owners' objections to Skibicki's summary judgment evidence. After the trial court denied Singh's motion for new trial, this appeal followed.

## Objections to Summary Judgment Evidence

In his third issue, Singh contends that the trial court improperly overruled his objections to Skibicki's summary judgment evidence.

We review a trial court's ruling on objections to summary judgment evidence for an abuse of discretion. *Chandler v. CSC Applied Techs., LLC*, 376 S.W.3d 802, 824 (Tex. App.—Houston [1st Dist.] 2012, pet. denied); *Finger v. Ray*, 326 S.W.3d 285, 290 (Tex. App.—Houston [1st Dist.] 2010, no pet.). A trial court abuses its discretion when it rules "without regard for any guiding rules or

10

principles." *Owens-Corning Fiberglas Corp. v. Malone*, 972 S.W.2d 35, 43 (Tex. 1998) (quoting *City of Brownsville v. Alvarado*, 897 S.W.2d 750, 754 (Tex. 1995)). To obtain reversal for the erroneous admission of evidence, the appellant must establish that the error was harmful, that is, that the erroneous admission was calculated to cause and probably did cause the rendition of an improper judgment. *In re Estate of Denman*, 362 S.W.3d 134, 141 (Tex. App.—San Antonio 2011, no pet.). Errors in the admission of evidence are generally not reversible unless the appellant can demonstrate that the entire cause turns on the complained-of evidence. *Id.*; *see also Interstate Northborough P'ship v. State*, 66 S.W.3d 213, 220 (Tex. 2001) ("Typically, a successful challenge to a trial court's evidentiary rulings requires the complaining party to demonstrate that the judgment turns on the particular evidence excluded or admitted.").

In arguing that the trial court improperly overruled his objections to Skibicki's summary judgment evidence, Singh only generally refers to the objections that he made in his summary judgment response. Singh cites no law relevant to his objections; he does not demonstrate why the trial court abused its discretion in overruling his objections; and he does not demonstrate that the trial court's evidentiary rulings probably caused the rendition of an improper judgment. An appellate brief "must contain a clear and concise argument for the contentions made, with appropriate citations to authorities and to the record." TEX. R. APP. P.

11

38.1(i).  We conclude that Singh has not adequately briefed his issue on appeal concerning his evidentiary objections.  *See id.*; *Cruz v. Van Sickle*, 452 S.W.3d 503, 511 (Tex. App.—Dallas 2014, pet. denied) (refusing to consider appellant's challenges to trial court's evidentiary rulings when appellant did not "identify the specific objections he intend[ed] to challenge" and "provide[d] no discussion or legal authority in the argument section of his brief to support his challenges to the trial court rulings").

We overrule Singh's fourth issue.

### Summary Judgment

In his first issue, Singh contends that the trial court erred in ordering specific performance of the payment obligations under the Agreement.  In his second issue, Singh contends that the Agreement limits Skibicki's remedies to specific performance and injunctive relief and "bars specific performance of payment or a judgment for damages."  In his fourth issue, Singh argues that Skibicki was not entitled to specific performance because he failed to establish that he had complied with his obligations under the Agreement.  We consider these issues together.

#### A.  *Standard of Review*

We review a trial court's ruling on a summary judgment motion de novo. *Travelers Ins. Co. v. Joachim*, 315 S.W.3d 860, 862 (Tex. 2010).  To prevail on a traditional summary judgment motion, the movant bears the burden of proving that

no genuine issues of material fact exist and that it is entitled to judgment as a matter of law. TEX. R. CIV. P. 166a(c); *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009). When a plaintiff moves for summary judgment, he must prove that he is entitled to judgment as a matter of law on each element of his cause of action. *See MMP, Ltd. v. Jones*, 710 S.W.2d 59, 60 (Tex. 1986) (per curiam); *Cleveland v. Taylor*, 397 S.W.3d 683, 696–97 (Tex. App.—Houston [1st Dist.] 2012, pet. denied).

A matter is conclusively established if reasonable people could not differ as to the conclusion to be drawn from the evidence. *See City of Keller v. Wilson*, 168 S.W.3d 802, 816 (Tex. 2005); *Cleveland*, 397 S.W.3d at 697. If the movant meets his burden, the burden then shifts to the nonmovant to raise a genuine issue of material fact precluding summary judgment. *See Centeq Realty, Inc. v. Siegler*, 899 S.W.2d 195, 197 (Tex. 1995); *Goodyear Tire & Rubber Co. v. Mayes*, 236 S.W.3d 754, 755 (Tex. 2007) (per curiam) (stating that summary judgment evidence raises fact issue if reasonable and fair-minded jurors could differ in their conclusions in light of all evidence presented). To determine if the nonmovant raised a fact issue, we review the evidence in the light most favorable to the nonmovant, crediting favorable evidence if reasonable jurors could and disregarding contrary evidence unless reasonable jurors could not. *Fielding*, 289 S.W.3d at 848 (citing *City of Keller*, 168 S.W.3d at 827); *Cleveland*, 397 S.W.3d at

697.  We indulge every reasonable inference and resolve any doubts in the nonmovant's favor.  *Sw. Elec. Power Co. v. Grant*, 73 S.W.3d 211, 215 (Tex. 2002) (citing *Sci. Spectrum, Inc. v. Martinez*, 941 S.W.2d 910, 911 (Tex. 1997)); *Cleveland*, 397 S.W.3d at 697.

We must affirm a summary judgment order if any of the grounds presented to the trial court are meritorious.  *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 216 (Tex. 2003); *Cleveland*, 397 S.W.3d at 697.

### B. Skibicki's Entitlement to Specific Performance

Parties to a contract are free to limit or modify the remedies available for breach of their agreement.  *Weaver v. Jamar*, 383 S.W.3d 805, 812 (Tex. App.—Houston [14th Dist.] 2012, no pet.); *GT & MC, Inc. v. Tex. City Ref., Inc.*, 822 S.W.2d 252, 256 (Tex. App.—Houston [1st Dist.] 1991, writ denied) ("Parties to a contract may agree on remedies for breach and that the agreed remedy is exclusive.").  If the parties agree to a particular contractual remedy, the court will enforce that remedy unless it is illegal or against public policy.[2]  *Weaver*, 383 S.W.3d at 812.  "This is part of our duty to determine and enforce the true intent of the parties involved." *Id.*

When construing a written contract, the primary concern of the court is to ascertain the true intentions of the parties as expressed in the contract.  *Seagull*

---

[2]    Singh has made no argument, either in the trial court or on appeal, that ordering specific performance in this case is illegal or against public policy.

14

*Energy E & P, Inc. v. Eland Energy, Inc.*, 207 S.W.3d 342, 345 (Tex. 2006); *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 662 (Tex. 2005). We presume that the parties intended for every clause to have some effect. *Forest Oil Corp. v. Eagle Rock Field Servs., LP*, 349 S.W.3d 696, 699 (Tex. App.—Houston [14th Dist.] 2011, no pet.) (citing *Heritage Res., Inc. v. NationsBank*, 939 S.W.2d 118, 121 (Tex. 1996)); *see also Valence Operating Co.*, 164 S.W.3d at 662 (stating that courts should "examine and consider the entire writing in an effort to harmonize and give effect to all the provisions of the contract so that none will be rendered meaningless"). We give contract terms their plain, ordinary, and generally accepted meanings unless the contract itself shows them to be used in a technical or different sense. *Valence Operating Co.*, 164 S.W.3d at 662; *Limestone Grp., Inc. v. Sai Thong, L.L.C.*, 107 S.W.3d 793, 797 (Tex. App.—Amarillo 2003, no pet.) (stating that in determining what parties mean by particular term, court "must afford the word its plain, everyday meaning"); *GT & MC, Inc.*, 822 S.W.2d at 256 (stating that language used by parties in contract "should be accorded its plain, grammatical meaning unless it definitely appears that the parties' intention would thereby be defeated").

Specific performance is an equitable remedy that may be awarded upon a showing of breach of contract. *Luccia v. Ross*, 274 S.W.3d 140, 146 (Tex. App.—Houston [1st Dist.] 2008, pet. denied); *Stafford v. S. Vanity Magazine, Inc.*, 231

15

S.W.3d 530, 535 (Tex. App.—Dallas 2007, pet. denied). The essential elements of a claim for breach of contract are: (1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of the contract by the defendant; and (4) damages sustained by the plaintiff as a result of the breach. *Luccia*, 274 S.W.3d at 146 (citing *Valero Mktg. & Supply Co. v. Kalama Int'l*, 51 S.W.3d 345, 351 (Tex. App.—Houston [1st Dist.] 2001, no pet.)). A party seeking specific performance must demonstrate that he is ready, willing, and able to perform the contract. *Id.*; *see also DiGiuseppe v. Lawler*, 269 S.W.3d 588, 594 (Tex. 2008) ("It is also a general rule of equity jurisprudence in Texas that a party must show that he has complied with his obligations under the contract to be entitled to specific performance."). Specific performance may be awarded at the trial court's discretion. *Paciwest, Inc. v. Warner Alan Props., LLC*, 266 S.W.3d 559, 571 (Tex. App.—Fort Worth 2008, pet. denied).

Here, the Agreement obligates Skibicki to assign his membership interest in Indopol Houston to the remaining owners. The Agreement obligates the remaining owners to pay Skibicki a total of $1,776,475 for his membership interest and sets out a timetable for payment of the purchase price of the interest. The Agreement also specifically addresses the remedies available to each party in the event of a breach:

> 5. LIMITATION ON [SKIBICKI'S] REMEDIES. Upon any default by [the remaining owners] under this Agreement, including

16

but not limited to, [the remaining owners'] failure to timely pay to [Skibicki] the Purchase Price in accordance with Paragraph 2.G of this Agreement, [Skibicki's] *sole and exclusive remedy shall be to enforce the specific terms of this Agreement and/or exercise [his] rights under the Deed of Trust and Security Agreement* securing [Skibicki].

6. LIMITATION ON [THE REMAINING OWNERS'] REMEDIES. Upon any default by [Skibicki] under this Agreement, [the remaining owners'] sole and exclusive remedy shall be to enforce the specific terms of this Agreement.

7. REMEDIES. For the enforcement of any of the provisions of this Agreement, each party shall have the rights to specific performance and injunctive relief in the broadest sense necessary to effect the protection and rights which the party has acquired under this Agreement. . . .

(Emphasis added.)

Skibicki and the remaining owners were free to contractually limit their available remedies in the event of a breach, and both parties did so in the Agreement. *See Weaver*, 383 S.W.3d at 812. The Agreement states, in plain language, that upon any default by the remaining owners under the Agreement, including a default resulting from a failure to pay the purchase price for Skibicki's membership interest in accordance with the terms of the Agreement, Skibicki's remedy is limited to "enforce[ing] the specific terms" of the Agreement "and/or exercise[ing his] rights under the Deed of Trust and Security Agreement." The unambiguous language of the Agreement thus entitles Skibicki, upon a breach by the remaining owners, to seek specific performance of the terms of the Agreement, which include payment of the remaining owners' payment obligations to him, to

17

seek relief under the deed of trust and security agreement, or to do both. *See Valence Operating Co.*, 164 S.W.3d at 662 (stating that, in construing contracts, we give effect to all provisions and we give contract terms "their plain, ordinary, and generally accepted meanings"). The Agreement does not, as Singh contends on appeal, limit Skibicki's remedy solely to pursuing his rights under the deed of trust and security agreement.

Singh argues that Skibicki is not entitled to specific performance because he cannot establish that he lacks an adequate remedy at law. Generally, specific performance may not be awarded to a party unless that party demonstrates that there is no adequate remedy at law. *See S. Plains Switching, Ltd. v. BNSF Ry. Co.*, 255 S.W.3d 690, 703 (Tex. App.—Amarillo 2008, pet. denied); *Stafford*, 231 S.W.3d at 535 ("Specific performance is not a separate cause of action, but rather it is an equitable remedy used as a substitute for monetary damages when such damages would not be adequate."). Here, however, the parties contractually agreed to limit their remedies in the event of a breach to specific performance of the terms of the Agreement, although Skibicki also retained the option to pursue his rights under the deed of trust and security agreement in lieu of or in addition to enforcing the specific terms of the Agreement. Because the parties expressly agreed to limit their remedies to specific performance of the Agreement, Skibicki need not also establish that he lacks an adequate remedy at law to be entitled to

18

specific performance as a result of Singh's breach of the Agreement. *See Weaver*, 383 S.W.3d at 812 (stating that if parties agree to particular contractual remedy, courts will enforce that remedy unless it is illegal or against public policy).

Singh also argues on appeal that "given the threats made by Skibicki, there was a fact question regarding whether [Skibicki was] entitled to this equitable remedy" of specific performance. In the trial court, Tahera Chowdhury, Sharif Choudhury, and Enterprise Houston, Inc. filed a separate summary judgment response from Singh and the remaining owners. In that response, they argued that Choudhury and Chowdhury had not wanted to enter into the Agreement, but "Mr. Skibicki made statements that he intended to use force to effectuate the agreement."

The doctrine of unclean hands operates as a bar to the equitable remedy of specific performance. *Paciwest, Inc.*, 266 S.W.3d at 571; *Stafford*, 231 S.W.3d at 536 n.4. The party claiming unclean hands has the burden to demonstrate that it was injured by the other party's unlawful or inequitable conduct. *Paciwest, Inc.*, 266 S.W.3d at 571; *Stafford*, 231 S.W.3d at 536 n.4. This doctrine should not be applied unless the party asserting it has been seriously harmed and the wrong complained of cannot be corrected without application of the doctrine. *Dunnagan v. Watson*, 204 S.W.3d 30, 41 (Tex. App.—Fort Worth 2006, pet. denied) (citing

*City of Fredericksburg v. Bopp*, 126 S.W.3d 218, 221 (Tex. App.—San Antonio 2003, no pet.)).

Neither Choudhury nor the rest of the remaining owners raised duress or unclean hands as an affirmative defense in the trial court. Singh presented no evidence that Skibicki ever made similar alleged comments to him or that he suffered an injury due to Skibicki's alleged comments to Choudhury. As the party claiming unclean hands, Singh had the burden to demonstrate in the trial court that he was injured by Skibicki's allegedly unlawful conduct. *See Paciwest, Inc.*, 266 S.W.3d at 571; *Stafford*, 231 S.W.3d at 536 n.4. Because Singh failed to make this showing in the trial court, he cannot rely on the unclean hands doctrine to bar specific performance in favor of Skibicki.

In his fourth issue, Singh contends that Skibicki failed to prove that he "complied with all of [his] necessary obligations and had an enforceable contract." Singh argues that the Agreement required the "Withdrawing Owner," defined in the Agreement as both Skibicki and A & Skipol, Inc., to assign its membership interest in Indopol Houston to the remaining owners, that Skibicki attached to his summary judgment motion a purported assignment of his individual interest in Indopol Houston, that the remaining owners objected to this document as "unauthenticated and inadmissible hearsay," and that no evidence of an

enforceable agreement between the parties exists "because A & Skipol, Inc., never transferred its interest, which it was required to do . . . pursuant to the Agreement."

Singh and the other remaining owners objected in the trial court to the assignment of interest that Skibicki attached to his summary judgment motion. However, they objected on the basis of hearsay, authenticity, and relevancy. The remaining owners argued that, "as specified in the objections cited above and incorporated by reference herein, none of the foregoing [pieces of evidence attached by Skibicki to his motion] contain admissible evidence of a valid and enforceable agreement and that the Responding Defendants breached the agreement . . . ." The remaining owners argued in the trial court that Skibicki did not provide competent evidence demonstrating a valid and enforceable agreement or that they breached the agreement. They did not argue that Skibicki failed to present evidence of performance or tender of performance. They also did not object to the assignment of interest on the basis that it did not properly transfer A & Skipol's interest in Indopol Houston and, thus, that it rendered the Agreement unenforceable. Singh and the remaining owners did not raise this argument until their motion for new trial.

"Issues not expressly presented to the trial court by written motion, answer or other response shall not be considered on appeal as grounds for reversal" of a summary judgment ruling. TEX. R. CIV. P. 166a(c). In reviewing an order granting

21

summary judgment, we are restricted to the arguments expressly presented to the trial court in the written summary judgment motion and the written response. *Ritchey v. Pinnell*, 324 S.W.3d 815, 821 (Tex. App.—Texarkana 2010, no pet.); *Driskill v. Ford Motor Co.*, 269 S.W.3d 199, 206 (Tex. App.—Texarkana 2008, no pet.) ("A summary judgment cannot be reversed on appeal based on an issue that was not expressly and timely presented to the trial court by written response or other document."); *see also City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 679 (Tex. 1979) ("[T]he non-movant must now, in a written answer or response to the motion, expressly present to the trial court those issues that would defeat the movant's right to a summary judgment and failing to do so, may not later assign them as error on appeal.").

Singh objected to the assignment of interest in his summary-judgment response on three bases: authenticity, hearsay, and relevancy. He did not argue that the assignment of interest was ineffective because it purportedly transferred only Skibicki's interest in Indopol Houston and not A. & Skipol, Inc.'s interest. He did not argue that, as a result of this purported failure, the Agreement was unenforceable or that Skibicki did not perform or tender performance under the Agreement. Because Singh did not raise this argument in his summary-judgment response, he cannot rely upon this argument on appeal to support reversal of the trial court's summary judgment ruling. *See Clear Creek Basin Auth.*, 589 S.W.2d

22

at 679 (stating that nonmovant must state in written answer or response to summary judgment motion all issues that would defeat movant's right to summary judgment and, if it does not, it may not "assign them as error on appeal"); *Driskill*, 269 S.W.3d at 206 (stating that we may not reverse summary judgment ruling on issue not expressly and timely presented to trial court in written response).

The plain language of the Agreement provides that, in the event of a default by the remaining owners, including a default resulting from the remaining owners' failure to pay the purchase price for Skibicki's membership interest in Indopol Houston, Skibicki may seek to "enforce the specific terms of [the] Agreement." We therefore conclude that the trial court appropriately ruled that Skibicki is entitled to specific performance under the terms of the Agreement, and, thus, the trial court did not err by granting Skibicki's summary judgment motion and requiring the remaining owners, including Singh, to pay Skibicki $1,646,475 pursuant to the terms of the Agreement.

We overrule Singh's first, second, and fourth issues.

## Conclusion

We affirm the judgment of the trial court.

Evelyn V. Keyes
Justice

Panel consists of Justices Jennings, Keyes, and Bland.